IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY S. STRONG | § | |
| d/b/a BILL'S PAWN SHOP | § | |
| FFL No. 5-75-113-02-3E-02815, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | Civil Action No. 3:04-CV-2626-L |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Respondent's Motion for Summary Judgment, filed April 8, 2005. Upon careful consideration of the motion, response, reply, appendices, competent summary judgment evidence, record, and applicable law, the court **grants** Respondent's Motion for Summary Judgment.

## I.    Procedural and Factual Background

Petitioner Billy Strong, doing business as Bill's Pawn Shop ("Petitioner" or "Strong"), initiated this action against the United States of America (the "government") on December 10, 2004 by timely filing a petition for judicial review of the administrative decision denying renewal of his federal firearms license application. Pursuant to the Gun Control Act of 1968, as amended, 18 U.S.C. §§ 921-931, and specifically 18 U.S.C. § 923(f)(3), the court has conducted a *de novo* judicial review of the ATF's administrative decision.

In his petition, Strong contends that he has never committed a willful violation of the Gun Control Act or its concomitant regulations but instead has conducted the purchase and sale of all firearms in a good faith attempt to comply with the law. Strong "specifically denies" the findings and conclusions reached in the Final Notice of Denial of Application or Revocation of Firearms

**Memorandum Opinion and Order - Page 1**

License ("Final Notice"), issued November 18, 2004.  Strong requests a hearing before the court, whereby he "intends to show that there was no willful violation and that the petitioner has always acted in good faith."  *See* Pet. at 2.

The government filed its motion for summary judgment concerning Strong's petition on April 8, 2005.  It contends that the court may grant summary judgment as part of its section 923(f)(3) *de novo* review without conducting an evidentiary hearing.  Specifically, the government asserts that Strong has failed to raise a genuine issue of material fact suggesting that he did not willfully violate the Gun Control Act.  Moreover, it contends that summary judgment should be granted because Strong has not identified the specific findings and conclusions within the November 18, 2004 Final Notice that he challenges.  In addition, the government asserts that Strong has failed to present sufficient evidence explaining the whereabouts of some 171 "unaccounted for" firearms[1] even though he has had over three years to do so.

Strong counters, contending that the court cannot determine the issue of willfulness by way of a summary judgment proceeding, at least not without conducting an evidentiary hearing as part of its section 923(f)(3) *de novo* review.[2]  Alternatively, Strong states that if the court can consider the issue of willfulness in a summary judgment proceeding, then he has raised genuine issues of material fact disputing whether he willfully violated the Gun Control Act.  He asserts that his actions "have been at worst negligent" but at no time were willful violations of the Gun Control Act.  Petr.'s Resp. at 1.

---

[1]An "unaccounted for" firearm is one which the firearms Acquisition and Disposition records indicate was received on the business premises but cannot be located on such premises.  *See* Final Notice at 3.

[2]Strong contends that he is entitled to a full evidentiary hearing in the district court. While Strong does not explicitly assert that the court cannot grant summary judgment pursuant to its 18 U.S.C. § 923(f)(3) *de novo* judicial review, he implicitly does so by contending that the court cannot decide the issue of willfulness by way of summary judgment without conducting an evidentiary hearing.

**Memorandum Opinion and Order - Page 2**

The court now sets forth the facts upon which it relies to resolve the motion. In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

## A. Inspection and Compliance History of Bill's Pawn Shop

Strong owns and operates Bill's Pawn Shop in Grand Prairie, Texas. He has held a federal firearms license as a dealer, including pawnbroker of firearms, since 1968. Bill's Pawn Shop maintains written firearm records. Strong's daughter, Jeannine Worthington ("Worthington"), is primarily responsible for firearm sales and recordkeeping. Nearly all firearms transactions are pawn; these transactions represent a small portion of the shop's total pawn activity.

The Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF") has conducted 14 compliance inspections at Bill's Pawn Shop.[3] The most recent inspection occurred January 7, 2003 through January 23, 2003. ATF Inspector Faith Richardson ("Richardson") initially reviewed Strong's firearms records for the time period April 1998 to January 2003. She counted 144 "open dispositions"[4] in Strong's Acquisition and Disposition records, but noticed that only 129 firearms

---

[3]ATF inspections were conducted in 1975, 1977, 1978, 1979, 1980, 1983, 1984, 1985, 1986, 1989, 1990, 1994, 1995, and 2003. A Report of Violations was issued in 1978, 1979, 1983, 1985, 1994, 1995, and 2003. Strong's violation history before the 2003 inspection:

- November 1978: violation of 27 C.F.R. § 178.125(e) (records maintenance violation);
- January 1979: violation of 27 C.F.R. § 178.125(e) (records maintenance violation);
- June 1983: violation of 27 C.F.R. § 178.125(e) (records maintenance violation);
- April 1985: violation of 27 C.F.R. § 178.99 (sale to a prohibited person);
- May 1994: violations of 27 C.F.R. §§ 178.124(c) (ATF Form 4473 violation); 125(e) (records maintenance violation); and
- October 1995: violations of 27 C.F.R. §§ 178.124 (transaction records violation); 125(e) (records maintenance violation).

Notice of Denial of Application for License ("Notice of Denial") at 8. A Report of Violations was issued in each of these years. *See* Final Notice at 7. The provisions of 27 C.F.R. § 178 were recodified as 27 C.F.R. § 478 on January 23, 2003.

[4]An "open disposition" appears to signify a firearm that has been recorded in the Acquisition and Disposition records with a disposition status that is either pending or unknown. *See* 27 C.F.R. §§ 478.124, 124a, 125(e). Apparently, an "open disposition" becomes an "unaccounted for" firearm once the firearm cannot be located in inventory. *See* 27 C.F.R. §§ 478.124, 124a, 125(e). The government uses the term "open disposition" throughout its briefing. *See, e.g.*, Mot. for Summ. J. at 2-3. Likewise, Strong uses the term in his sworn affidavit. *See* Petr.'s App. at 3. The term also appears in the Final Notice (Respt.'s App. Attach. C); the ATF Firearms Compliance Inspection Narrative Report ("Narr. Report") (Respt.'s Ex. 4); and the ATF Firearms Compliance Inspection Worksheets Nos. 1 and 2 (Respt.'s Ex. 5). The

**Memorandum Opinion and Order - Page 3**

were present in Strong's inventory.[5]  Richardson concluded that 15 firearms were "unaccounted for" since each of the 15 firearms was listed as being on-premises but could not be located.  Richardson subsequently reviewed the pre-1998 records.  Upon reviewing all records from 1984 through January 2003, Richardson counted a total of 305 open dispositions, thereby discovering that a 176 firearm discrepancy existed between the 305 entries listing a specific firearm as on-premises, and the 129 firearms in Strong's inventory.  Following her discovery, Richardson advised Strong to conduct an inventory verification.

On January 27, 2003, Strong and his friend Mike Lennard ("Lennard") began inventorying all firearms that Bill's Pawn Shop had acquired, including those that Strong kept at his residence and those Lennard had taken off-premises for repair.  They disclosed a total inventory of 177 firearms. Richardson then instructed Strong to correct the discrepancy between his records and his inventory by producing either (1) the firearm underlying each open disposition; or (2) the Firearms Transaction Record, Form 4473, for such firearm.[6]  In April 2003, ATF Dallas Area Supervisor Claude Maraist

---

term "open disposition" is not defined in the Gun Control Act or its regulations; and although both parties have used the term, neither has defined it.  The closest attempt to a definition comes in the Narrative Report, which states that the 2003 inspection "revealed over 300 firearm dispositions not entered into the [A]cquisition and [D]isposition book."  Respt.'s Ex. 4 at 1.  **The court admonishes the parties that using this term without offering *any* explanation has caused it to devote scarce judicial resources to learn the meaning of a term the parties could have explained in a matter of minutes.  A court should not have to search for or guess the meaning of terms that are essential for it to make a ruling.**

[5]The parties speak considerably about "inventory" throughout their briefing but fail to define the term.  Black's Law Dictionary defines "inventory" to mean "1.  A detailed list of assets . . . ."  Black's Law Dictionary 844 (8th ed. 2004).  The Gun Control Act and its regulations do not define "inventory" but several regulations provide guidance.  27 C.F.R. §§ 478.39a and 125a clarify that "business inventory" is distinct from a "personal firearms collection."  Moreover, 27 C.F.R. § 478.23 states an ATF officer, upon reasonable cause, may examine or inspect "[a]ny inventory of firearms or ammunition kept or stored . . . at such premises . . . ."

[6]A firearms dealer must ensure that a Form 4473 is completed for each firearm transacted.  This form requires a prospective firearms purchaser to disclose information and answer questions.  By requiring the purchaser to complete properly the Form 4473 and by verifying the information, the licensee helps ensure that it is not selling a firearm to a person prohibited by law from possessing a firearm.  *See Willingham Sports, Inc. v. ATF*, 348 F.Supp.2d 1299, 1302 n.3 (S.D. Ala. 2004), *aff'd per curiam*, 415 F.3d 1274 (11th Cir. 2005).

**Memorandum Opinion and Order - Page 4**

("Maraist") accompanied Richardson to Bill's Pawn Shop. Upon reviewing the state of the records, Maraist informed Strong and Worthington that their license was in jeopardy and that they were responsible for reconciling the discrepancy.

The exchange between the ATF and Bill's Pawn Shop continued until late July 2003, when a final count was determined. ATF records indicate that Strong ultimately resolved 134 of the 305 open dispositions. Strong produced Forms 4473 explaining the disposition of 45 of the firearms; he was also able to match 89 firearms in his inventory with firearms entries found in his records.[7] ATF records indicate that 171 open dispositions remained at the end of the investigation, meaning that 171 firearms had been entered in Strong's firearms records but were not located in his inventory.

Richardson met with Strong on March 25, 2003, and "all violations were discussed at length." *See* Narr. Report at 5. Richardson gave Strong a Federal Firearms Licensee Theft/Loss Report, ATF Form 3310.11, and instructed that he must submit the form if he determined that the firearms forming the basis of the remaining 171 open dispositions were lost or stolen. Strong never submitted such form.

The ATF concluded that Strong failed to record properly the receipt and sale of firearms, in violation of 18 U.S.C. §§ 922(m) and 923(g)(1)(A), as well as 27 C.F.R. § 478.124 (a) and 125(e). Moreover, during the 2003 inspection, Richardson reviewed a total of 104 Forms 4473. She

---

[7]Strong was not cited in his 2003 Report of Violations for possessing firearms in his inventory that were not listed in his Acquisition and Disposition records. Moreover, the Government has presented no evidence identifying the 89 firearms in inventory that were not entered into such records. *See* Hr'g Officer's Report (Respt.'s App. Attach. B) at 2. Accordingly, the court has not considered the presence of unrecorded firearms in Strong's inventory in performing its section 923(f)(3) *de novo* judicial review.

**Memorandum Opinion and Order - Page 5**

concluded that 102 of the 104 forms contained at least one error, and that the forms were not maintained as required by Gun Control Act regulations.[8]

Strong disputes the ATF's conclusion that 171 firearms were unaccounted for. He avers that he never had a gun on his premises that was not logged into his book.   Strong also avers that many of the firearm dispositions deemed "open" by the ATF were actually completed and recorded firearm transfers, or were incomplete or denied forms which did not result in a firearm transfer but were kept for records purposes.   He contends that Richardson counted entries that had "ditto" marks and, likewise, held him accountable for uncompleted forms covering older firearms, which often contain no identification marks or unreadable ones.   Although Strong disputes the number of open dispositions existing at the conclusion of the 2003 inspection, he does not dispute that open dispositions existed at the time of the inspection.   Moreover, although he produced competent summary judgment evidence accounting for some of these dispositions, he has not shown the number of dispositions that have been resolved.


**B.  The Non-Renewal of Bill's Pawn Shop's Federal Firearms License**

Strong filed an application for renewal of his federal firearms license on April 17, 2003.  On April 19, 2003, the ATF issued Strong a Notice of Denial of Application for License ("Notice of

---

[8]During its 2003 inspection, the ATF determined that Strong committed, among others, the following violations:
- failure to record accurately firearm information in the Acquisition and Disposition Records in at least 6 instances, in violation of 27 C.F.R. § 478.125(e);
- failure to obtain a properly completed ATF Form 4473 in at least 92 instances, in violation of 18 U.S.C. §923(g)(1)(A) and 27 C.F.R. § 478.124(c)(1);
- failure to record all required identification information on ATF Form 4473s in at least 63 instances, in violation of 17 U.S.C. 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(3)(i);
- failure to record information required by the National Instant Criminal Background Check System ("NICS") in at least 18 instances, in violation of 923(g)(1)(A) and 27 C.F.R. § 478.124(c)(3)(iv); and
- failure to retain ATF Forms 4473 in alphabetical, chronological or numerical order, in violation of 27 C.F.R. § 478.124(b).

Notice of Denial at 6-7.

Denial").[9]  Strong timely requested an administrative hearing pursuant to 18 U.S.C. § 923(f)(2), and

a hearing was held on September 8-9, 2004.  Approximately 14 months passed between the close

of the inspection and the hearing.  At the hearing, Strong and Worthington contended that the ATF

never provided a final and correct list of open or unaccounted for firearms.  Strong testified, "I've

never had a gun that wasn't in my book . . . anything I've got is booked in my books or I don't have

it."  Tr. of Sept. 8, 2004 Hr'g at 74.  He also stated, "We've made a lot of mistakes.  We know it,

but we haven't done anything illegal." *Id*. at 165-66.  Strong's attorney argued that Strong may have

committed "a tremendous amount of negligence" but did not engage in "a total disregard" of the law.

Tr. of Sept. 9, 2004 Hr'g at 131.

At the conclusion of the hearing, Strong was given additional time to provide documents to

reconcile the firearms discrepancy.  Strong then submitted additional materials to the hearing officer,

who, in turn, credited him with resolving 29 dispositions.  Strong has not objected to, or otherwise

disputed, this finding by the hearing officer.  On November 18, 2004, the ATF issued its Final

Notice, concluding that Strong willfully violated the Gun Control Act because his "repeat

violations" indicated "a plain indifference and purposeful disregard for" the Act.  *See* Final Notice

at 8.  Strong timely filed his petition for federal district court review pursuant to 18 U.S.C. §

923(f)(3) on December 10, 2004.

II.    **Standard of Review**

A.  **Summary Judgment Standard**

---

[9]The notice of denial stated that Strong willfully violated the following provisions of the Gun Control Act: 18 U.S.C. §§ 922(d), (m), (t)(1), and 923(g)(1)(A).  It also stated that Strong violated the following concomitant regulations: 27 C.F.R.  §§ 478.99(c), 478.102(a)-(b), 478.103, 478.124(a)-(b),  (c)(1),  (c)(3)(i),  (c)(3)(iii)-(iv),  (c)(4)-(5),  (e), 478.126(a), 478.129(b).

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at

**Memorandum Opinion and Order - Page 8**

458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence"

to support the nonmovant's opposition to the motion for summary judgment.  *Id*.; *see also Skotak*

*v. Tenneco Resins*, *Inc*., 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832

(1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact

issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a

summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of

proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

**B.  Standard of Review Pursuant to an 18 U.S.C. § 923(f)(3) *De Novo* Judicial Review**

The ATF's decision to deny an application for renewal of a federal firearms license is

governed by 18 U.S.C. § 923(f)(3), which states that a holder of a license which is revoked may "file

a petition with the United States district court for the district in which he resides or has his principal

place of business for a *de novo judicial review* of such denial or revocation."  18 U.S.C. § 923(f)(3)

(emphasis added).  Section 923(f)(3) states:

> In a proceeding conducted under this subsection, the court may consider any
> evidence submitted by the parties to the proceeding whether or not such evidence
> was considered at the [administrative] hearing . . . . If the court decides that the
> Attorney General was not authorized to deny the application [then] the court shall
> order the Attorney General to take such action as may be necessary to comply with
> the judgment of the court.

18 U.S.C. § 923(f)(3).

The issue before the court is relatively new to Fifth Circuit jurisprudence.[10]  In issuing the present opinion, the court has reviewed *In re Revocation of the License of Doris Vaughn v. ATF*, No. 1:04MC3-D (N. D. Miss. Apr. 12, 2005), as well as relevant case law from other federal circuits. When the district court conducts a section 923(f)(3) *de novo* review, the underlying administrative denial is entitled to no presumption of correctness, and the court may attach to the government's decision whatever weight, if any, it deems appropriate.  *See Willingham Sports, Inc. v. ATF*, 348 F. Supp.2d 1299, 1306 (S.D. Ala. 2004), *aff'd per curiam*, 415 F.3d 1274 (11th Cir. 2005); *see also Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980).  The district court may accord the administrative findings such weight as it believes they deserve in light of the evidence in the administrative record and the evidence, if any, the district court receives to supplement that record. *Stein's*, 649 F.2d at 466-67.[11]

Although this action is postured as an appeal from an ATF administrative decision, the court's summary judgment analysis remains unchanged, and it may grant summary judgment pursuant to 18 U.S.C. § 923(f)(3), provided there are no issues of material fact in dispute. *Willingham Sports, Inc.*, 348 F. Supp.2d at 1306; *Cucchiara v. ATF*, 652 F.2d 28, 31 (9th Cir. 1981),

---

[10]The United States District Court for the Northern District of Mississippi, Eastern Division, has addressed the issue.  *See In re Revocation of the License of Doris Vaughn v. ATF*, No. 1:04MC3-D (N. D. Miss. Apr. 12, 2005).  In that case, Chief Judge Davidson granted summary judgment for the ATF, reasoning that the plaintiff willfully violated the Gun Control Act.  The order is unpublished and does not appear on Westlaw or other electronic source.  Moreover, no notice of appeal was filed.

[11]The scope of section 923(f)(3) *de novo* review, by analogy, parallels the standard set forth in *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980), governing the scope of a district court's *de novo* determination, in the context of a dispositive motion, of the portions of a magistrate judge's proposed findings and recommendations to which objection is made, pursuant to 28 U.S.C. § 636.  *Raddatz* clarifies that, in providing for a *"de novo* determination" rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge chooses to place on a magistrate's proposed findings and recommendations.  *Raddatz*, 447 U.S. at 676; *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (stating a district judge makes his or her "*own determination* based upon the record and *unrestrained* by the findings and conclusions of the magistrate").  In other words, "de novo" review means the court "will examine the entire record, and will make an independent assessment of the law."  *Alazan-Apache Resident Ass'n v. San Antonio Hous. Auth.*, 885 F.Supp. 949, 951 (W.D. Tex. 1995).   The court has reviewed the ATF's decision "from scratch" and has made its own assessment whether Strong's license should be renewed or denied.  *See* 18 U.S.C. § 923(f)(3).

**Memorandum Opinion and Order - Page 10**

*cert.* denied, 455 U.S. 948 (1982); *In re Doris Vaughn*, No. 1:04MC3-D, at *4. As the *Stein's* court stated:

> [B]ecause the procedure for review pursuant to 18 U.S.C. § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, the practice of the courts has been to grant judgment summarily when the material facts developed at the administrative hearing, which the court also concludes justify non-renewal, are not substantially drawn into question by the party petitioning for review.

*Stein's*, 649 F.2d at 468 n.3 (internal citations and quotations omitted); *see also Willingham Sports*, *Inc.*, 415 F.3d at 1275; *Cucchiara*, 652 F.2d at 31 n.1; *3 Bridges, Inc. v. United States*, 216 F. Supp.2d 655, 657 (E.D. Ky 2002). When a petitioner fails to establish genuine issues of material fact in a section 923(f)(3) appeal, the district court need not hold an evidentiary hearing before deciding a summary judgment motion. *Perri v. Department of Treas.*, 637 F.2d 1332, 1335 (9th Cir. 1981); *Stein's*, 649 F.2d at 466; *Willingham Sports, Inc.*, 348 F.Supp.2d at 1307. Turning again to the *Stein's* court:

> [T]here is a difference between the 'de novo review' required by 18 U.S.C. § 923(f)(3) and a 'trial *de novo*' . . . . We hold that while [section 923(f)(3)] requires the former, it does not in every case require the latter. Considerations of judicial economy suggest that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact.

*Stein's*, 649 F.2d at 466; s*ee also Willingham Sports, Inc.*, 415 F.3d at 1307 (stating the Gun Control Act does not "vest a firearms dealer with an absolute right to an evidentiary hearing in appealing from an adverse ATF decision").[12]

## III.   <u>Analysis</u>

---

[12]Section 923(f)(3) states that "the court *may* consider any evidence submitted by the parties . . . whether or not such evidence was considered at the hearing . . . ." 18 U.S.C. § 923(f)(3). The word "may," as quoted, is *permissive*. The parties do not have an automatic or absolute right to an evidentiary hearing. *Willingham Sports, Inc.*, 348 F.Supp.2d at 1306. Rather, the district court is afforded "the *discretion* to receive additional evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review." *Stein's*, 649 F.2d at 466; *Cucchiara*, 652 F.2d at 1335.

A.      **Strong Willfully Violated the Gun Control Act and its Regulations**

1.      **Willfulness**

Upon notice and opportunity for a hearing, the Attorney General may revoke a firearms

dealer license when an applicant has "willfully violated any provision of [the Gun Control Act] or

any rule or regulation" issued thereunder.  18 U.S.C. §§ 923(e), (d)(1)(C).  The term "willful" is not

defined by section 923.   Although the Fifth Circuit has not addressed the issue, five of the six

circuits which have addressed it concluded that a violation is "willful" for purposes of section 923

where a firearms dealer "knew of his legal obligation and *purposefully disregarded* or was *plainly*

*indifferent* to the recordkeeping requirements."  *Willingham Sports, Inc.*, 415 F.3d at 1276 (emphasis

added).[13]   Courts generally hold that a licensee acts "willfully" if, "with knowledge of what the

regulations require, the licensee *repeatedly violates* the regulations."   *Id.* (emphasis added).[14]

Further, a "disregard of a known legal obligation is sufficient to establish a willful violation"

pursuant to section 923(d)(1)(C), but knowledge of the specific law violated is unnecessary, since

a licensee "willfully violates" the section if he or she performs conduct with knowledge that the

---

[13]*Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464-65 (6th Cir. 2004); *Perri v. Department of Treas.*, 637 F.2d 1332, 1336 (9th Cir. 1981); *Stein's*, 649 F.2d at 467; *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979); *see also In re Doris Vaughn*, No. 1:04MC3-D, at *4.  The definition of "willful" adopted by the Fourth Circuit in *Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979), differs only in that the term "plain indifference" is not explicitly used.  *See generally Willingham Sports, Inc.*, 415 F.3d at 1276.  The court notes that the Hearing Officer's Report, as well as the Final Notice, uses the *Stein's* willfulness standard.

[14]"A dealer's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference."  *Willingham Sports, Inc.*, 415 F.3d at 1277 (citations omitted).  Other cases supporting the willfulness standard include:   Appalachian *Res. Dev. Corp.*, 387 F.3d at 463-64 (licensee "had knowledge of the obligation" not to sell handgun ammunition to underage persons but committed "repeated violations" of that obligation); *Perri*, 637 F.2d at 1336; *Cucchiara*, 652 F.2d at 30; *Stein's*, 649 F.2d at 468 (pawnshop employees were "instructed on the requirements of the law" but "despite repeated warnings . . . violations continued to occur"); *Lewin*, 590 F.2d at 269.

conduct is unlawful. *Bryan v. United States*, 524 U.S. 184, 197-98 (1998).[15]  Likewise, no evidence showing bad purpose or evil motive is required for a willful violation of the Gun Control Act. *Appalachian Res. Dev. Corp.*, 387 F.3d at 464; *Stein's*, 649 F.2d at 467.

### 2.  Application of the Willfulness Standard

The government contends that the administrative decision to deny renewal of Strong's firearms license is justified because of Strong's repeated failure to maintain his records in the manner required by the Gun Control Act, despite actual notice of his deficiencies.  It points to six inspections, prior to the January 2003 inspection, where Bill's Pawn Shop received a Report of Violations.  The government produces evidence showing that Strong received notice of his failure to comply with 27 C.F.R. § 178.125(e) in five of these Reports, and each time, either Strong or someone acting on his behalf signed the Report.  The government also contends that Strong's petition fails to challenge specific findings and conclusions within the Final Notice, and, moreover, that Strong has not presented sufficient evidence explaining the whereabouts of 171 "unaccounted for" firearms, even though he has had over three years to do so.  The gravamen of the government's argument is that, while Strong challenges the number of "unaccounted for" firearms, he has not presented evidence showing that the violations did not occur or argued sufficiently why his repeated violations should not be considered "willful."

Strong contends that he has raised genuine issues of material fact suggesting that no willful violation of the Gun Control Act occurred.  He asserts that he did not "purposefully disregard" the Act or exercise "plain indifference" toward it.  Most notably, Strong argues that, although he read and signed Reports of Violations which detailed his recordkeeping violations, he never received a

---

[15]The Court in *Bryan* analyzed *Perri*, *Stein's*, *Lewin*, and *Prino* and stated that "while these cases support the notion that disregard of a known legal obligation is sufficient to establish a willful violation, *they in no way stand for the proposition that it is required*." *Id.* (emphasis added).

**Memorandum Opinion and Order - Page 13**

warning by the ATF that it would consider all future violations to be willful.  He also argues that he

was "trying" to comply with the Gun Control Act and therefore could not have wilfully violated its

provisions.  *See* Resp. at 2.  Further, he contends that some of his recordkeeping violations are

"technical violations" that "are minimal in nature," and that clerical mistakes in his records do not

indicate a purposeful disregard or a plain indifference toward recordkeeping requirements  *Id*. at 4.

Moreover, as previously stated, Strong disputes the administrative finding that 171 firearms remain

"unaccounted for."

Having conducted its section 923(f)(3) *de novo* judicial review, the court determines that

Strong willfully violated the Gun Control Act, pursuant to sections 923(d)(1)(C) and (e).  When the

court views all inferences drawn from the factual record in the light most favorable to Strong, from

the record before the court,  no reasonable factfinder could determine that Strong's violations were

anything other than willful.

To the extent Strong argues that he did not willfully violate the Gun Control Act because the

ATF never warned him that it would consider any future violations to be "willful," such argument

does not carry the day.  Although the court in *Cucchiara* stated that "future violations [after

receiving such prior warning] might be considered willful" and are probative on the issue of

willfulness, it did not require such warning as a predicate to the ATF revoking or denying renewal

of a firearms license.  *Cucchiara*, 652 F.2d at 30.  No court has imposed a requirement that such

warning must precede a determination of willfulness.  Some courts even recognize that a single

violation of the Gun Control Act provides the ATF a sufficient basis to revoke or deny renewal of

a firearms license.  *See In re Doris Vaughn*, No. 1:04MC3-D, at *4; *DiMartino v. Buckles*, 129

F.Supp.2d 824, 827 (D. Md. 2001); *Appalachian Res. Dev. Corp*., 387 F.3d at 464; *Willingham

Sports*, *Inc*., 348 F.Supp.2d at 1308.

**Memorandum Opinion and Order - Page 14**

The bottom line is that Strong received actual notice through six separate Reports of Violations issued before the 2003 inspection.  These Reports notified him of recordkeeping deficiencies and were signed by Strong or someone acting on his behalf.[16]  *See* Resp't's App. A, Ex. 8.  Moreover, each report states:  "An examination of your premises, records and operations has disclosed the following violations *which have been explained to you*:  . . . ." *Id.* (emphasis added).

Strong possessed a knowledge and understanding of applicable regulations or, at the very least, maintained his firearms records in a state of disrepair he knew to be unlawful.  *See Bryan*, 524 U.S. at 198.  Strong, a veteran in the firearms business, who had been licensed for over 35 years, knew that his license status hinged upon his compliance with the Gun Control Act and its regulations.  At the hearing, Strong admitted that he received ATF newsletters explaining regulation updates, and Worthington admitted that Bill's Pawn Shop had on-premise a copy of the current regulations guide.  Likewise, Strong stated, "We've made a lot of mistakes.  I'll admit our bookkeeping's bad . . . ."  Tr. of Sept. 8, 2004 Hr'g at 166.

Moreover, Strong has "repeatedly violated" the Gun Control Act.  He received citations on five separate occasions for violating, among other regulations, 27 C.F.R. § 178.125(e) and its recordkeeping requirements.  *See* Resp.'s App. A., Ex. 4.  The only reasonable inference that may be drawn is that Strong is habitually noncompliant.  *See In re Doris Vaughn*, at *6.  He has persisted in violating the same requirements, even after the ATF pinpointed deficiencies to him, time and time again, through Reports of Violations.  Such conduct epitomizes a "plain indifference" or disregard to the laws and regulations imposed upon firearms dealers and is a textbook section 923 "willful violation."  *See Willingham Sports*, *Inc.*, 415 F.3d at 1277; *Stein's*, 649 F.2d at 467-68; *In re Doris*

---

[16]Strong signed four of the reports, and Worthington signed one.  The signature on the 1995 Report of Violations is unreadable.  *See* Resp.'s App. A, Ex. 8.

**Memorandum Opinion and Order - Page 15**

*Vaughn*, No. 1:04MC3-D, at *6.  Strong's contention that he was "trying" to comply with the Gun Control Act does not square with the record.[17]

At some point in time, "the jig is up."  Strong had approximately 14 months between the close of the investigation and the administrative hearing to correct the 171 open dispositions in his firearms records.  Likewise, since filing his petition for district court review, he has had an additional 15 months to produce evidence to either:  (1) resolve the discrepancy; or (2) explain why his violations were not "willful."  The only additional evidence Strong has produced are two affidavits - one from Strong and one from Worthington - totaling three pages.  He never submitted the Form 3310.11 Theft/Loss Report as instructed by Richardson.  Although Strong disputes the administrative finding that 171 firearms remain "unaccounted for," and was credited with resolving 29 dispositions post-hearing, he has not produced sufficient competent summary judgment evidence showing the number of open dispositions that have been resolved.  Accordingly, the court determines that Strong's failure to produce evidence that he has, in fact, corrected his records is additional evidence of the plain indifference exercised toward the Gun Control Act and its regulations.

Finally, the court refuses to order the renewal of Strong's license, because this would contravene Congress's purpose "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v. United States*, 423 U.S. 212, 218 (1976).  Strong cannot account for as many as 171 firearms; this is quite disturbing.  ATF inspection and regulation

---

[17]Likewise, his argument that the violations he commited were technical or *de minimis*, or were the result of clerical error, does not raise a genuine issue of material fact to dispute whether he willfully violated the Gun Control Act. *See Stein*'s, 649 F.2d at 468; *Willingham Sports, Inc*., 348 F.Supp.2d at 1309; *Article II Gun Shop, Inc. v. Ashcroft*, No. 03-C-4598, 2005 WL 701053, at *5 (N.D. Ill. March 25, 2005).  Strong cannot choose which firearms regulations to follow and which to disregard as technical, *de minimis*, or unimportant.  His emphasis on technical or *de minimis* violations ignores the real problem:  he cannot account for a significant number of firearms. *See Willingham Sports, Inc*., 348 F.Supp.2d at 1309.

of firearms dealers are needed to help ensure that the seller of a firearm, as well as the purchaser, is responsible.  *See generally* 18 U.S.C. § 923.

A "tremendous amount of negligence" necessarily becomes willful conduct when the licensee is put on notice of the conduct and that conduct continues, despite such notice and knowledge of the law regarding recordkeeping requirements.  This is one of those cases, as the record amply demonstrates.  Having conducted a *de novo* judicial review pursuant to section 923(f)(3), the court, exercising its independent judgment, concludes that Strong has not raised genuine issues of material fact whether his repeated compliance failures were willful violations of the Gun Control Act and its regulations.  Accordingly, the government is entitled to judgment as a matter of law.

### B.       Strong is Not Entitled to an Evidentiary Hearing

Strong contends that he is entitled to an evidentiary hearing as part of the court's 923(f)(3) *de novo* judicial review before the court may decide the government's summary judgment motion. He contends that "a determination of willfulness can only be made by the finder of fact" and that the "issue of willfulness is simply not an appropriate one by way of summary judgment," even under section 923(f)(3).  Petr.'s Resp. At 1.  The court disagrees.

Pursuant to section 923(f)(3) *de novo* judicial review, "the ultimate decision as to the law and the facts remains with the judge."  *Stein's*, 649 F.2d at 466.  Since Strong has failed to raise a genuine issue of material fact whether he willfully violated the Gun Control Act, the district court may enter summary judgment without holding an evidentiary hearing. *Perri*, 637 F.2d at 1335; *Stein's*, 649 F.2d at 466; *Willingham Sports, Inc.*, 348 F.Supp.2d at 1307.  Moreover, Strong has offered no evidence suggesting that all of the charged violations are inaccurate or offered evidence differing substantially from that presented to the hearing officer.  *See Willingham Sports, Inc.*, 415

**Memorandum Opinion and Order - Page 17**

F.3d at 1312.  As stated previously, the only additional evidence Strong introduced into the record were two affidavits totaling three pages.  Accordingly, pursuant to section 923(f)(3), and in exercise of its discretion, the court determines that an evidentiary hearing is not required and would serve no useful purpose.

**IV.**    **Conclusion**

For the reasons herein stated, and pursuant to its 18 U.S.C. § 923(f)(3) *de novo* judicial review, the court concludes that the administrative decision as stated in the Final Notice issued November 18, 2004 is authorized by law and supported by the record.  Strong has failed to produce evidence establishing that a genuine issue of material fact exists whether his violations were willful.  Accordingly, the court **grants** Respondent's Motion for Summary Judgment, and **affirms** the ATF's final decision, issued November 18, 2004, denying renewal of Strong's federal firearms license.  Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 13th day of March, 2006.


Sam A. Lindsay
United States District Judge